

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| RUSSELL ANDREW SLENDAK, *individually and on behalf of similarly situated persons*,<br>　　　　Plaintiff,<br><br>vs.<br><br>LEAD DOG PIZZA, INC., and JOHN ECKBURG,<br>　　　　Defendants. | Civil Action No. 3:24-3988-MGL |

**MEMORANDUM OPINION AND ORDER
GRANTING PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION**

## I.　INTRODUCTION

Plaintiff Russell Andrew Slendak (Slendak), individually and on behalf of similarly situated persons, brings this action under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 216 et seq., against Defendants Lead Dog Pizza, Inc., and John W. Eckburg (collectively, Defendants). The Court has jurisdiction as per 28 U.S.C. § 1331.

Pending before the Court is Slendak's motion for conditional certification as a collective action. Having carefully considered the motion, the response, the reply, the record, and the applicable law, it is the judgment of the Court the motion will be granted.

## II.　FACTUAL AND PROCEDURAL HISTORY

Defendants, both of whom are citizens of South Carolina, "operate numerous Domino's Pizza franchise stores[,] . . . including stores within this District and this Division." Complaint

¶¶ 1, 8.  Slendak "was employed by Defendants from approximately July 2021 to October 2023 as a delivery driver at [their] Domino's store located in Augusta, [Georgia.]" *Id.* ¶ 7.

All "delivery drivers . . . have the same primary job duty: to deliver pizzas and other food items to customers' homes or workplaces" using their personal vehicles. *Id.* ¶¶ 1, 11.  "Defendants require [them] to maintain and pay for safe, legally operable, and insured automobiles . . . ." *Id.* ¶ 12.  Defendants also obligate "delivery drivers [to] incur costs for gasoline, vehicle parts and fluids, repair and maintenance services, insurance, depreciation, and other expenses . . . while delivering pizza and other food items for the primary benefit of Defendants." *Id.* ¶ 13.

Slendak alleges "Defendants' delivery driver reimbursement policy reimburses drivers on a per-mile basis, but the per-mile reimbursement equates to below the IRS business mileage reimbursement rate or any other reasonable approximation of the cost to own and operate a motor vehicle.  This policy applies to all of Defendants' delivery drivers." *Id.* ¶ 14.

As the Court stated above, Slendak filed this action on behalf of himself and all other similarly situated delivery drivers.  He seeks unpaid minimum wages and overtime hours based on Defendants' purported failure to adequately reimburse vehicle-related expenses.

Slendak recently filed this motion for conditional certification, which includes proposed notice and consent forms.  Defendants responded, and Slendak replied.  The Court, having been fully briefed on the relevant issues, will now adjudicate the motion.

### III.    STANDARD OF REVIEW

The collective action provision of the FLSA provides, in relevant part:

> An action to recover [for the FLSA violations set forth in this lawsuit] may be maintained against any employer . . . in any [f]ederal or [s]tate court of competent jurisdiction by any one or more employees for and [o]n behalf of himself or themselves and other employees similarly situated.  No employee shall be a party

> plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).

"Because trial court involvement in the notice process is inevitable in cases with numerous plaintiffs where written consent is required by statute, it lies within the discretion of a district court to begin its involvement early, at the point of the initial notice, rather than at some later time." *Degidio v. Crazy Horse Saloon & Rest. Inc.*, 880 F.3d 135, 144 (4th Cir. 2018) (quoting *Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193, 1201–03 (11th Cir. 1985)).

"A collective action under the [FLSA] differs from a class action under Federal Rule of Civil Procedure 23 because potential plaintiffs can join an FLSA collective action only by affirmatively giving consent in writing to become a party." *Id.* at 137 n.1. "In a class action, by contrast, plaintiffs are presumed to be members of a class unless they affirmatively opt out of the class proceeding." *Id.*

The Fourth Circuit has yet to provide clear guidance on the standard district courts should apply to motions seeking collective action certification under 29 U.S.C. § 216(b). The Supreme Court, however, has opined district courts "have discretion, in appropriate cases, to implement 29 U.S.C. § 216(b) . . . by facilitating notice to potential plaintiffs" of the pendency of the action and of their opportunity to opt-in as represented plaintiffs. *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989).

When district courts within the Fourth Circuit have been faced with whether to exercise this discretion in an "appropriate case," they have coalesced around a two-step method. *See, e.g.*, *Long v. CPI Sec. Sys., Inc.*, 292 F.R.D. 296, 298–99 (W.D.N.C. 2013); *Butler v. DirectSAT USA, LLC*, 876 F. Supp. 2d 560, 566 (D. Md. 2012); *Choimbol v. Fairfield Resorts, Inc.*, 475 F. Supp. 2d 557, 562–63 (E.D. Va. 2006). This Court has applied such method in its own cases. *See, e.g.*,

3

*Ridgeway v. Planet Pizza 2016, Inc.*, 3:17-cv-03064, 2019 WL 804883, at *1–3 (D.S.C. Feb. 21, 2019).

"At the first stage, the [C]ourt makes a preliminary determination whether to conditionally certify the class based upon the limited record before [it]." *Long*, 292 F.R.D. at 298 (citing *Romero v. Mountaire Farms, Inc.*, 796 F. Supp. 2d 700, 705 (E.D.N.C. 2011)). "Consistent with the underlying purpose of the FLSA's collective action procedure, this initial inquiry proceeds under a 'fairly lenient standard' and requires only 'minimal evidence.'" *Id.* (quoting *Romero*, 796 F. Supp. 2d at 705). In fact, "[t]he standard for conditional certification . . . requires nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Romero*, 796 F. Supp. 2d at 705 (internal quotation marks omitted) (quoting *Thiessen v. Gen. Elec. Cap. Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001)).

"The primary focus in this inquiry is whether the potential plaintiffs are similarly situated with respect to the legal and, to a lesser extent, the factual issues to be determined." *Long*, 292 F.R.D. at 298–99 (internal quotation marks omitted) (quoting *De Luna-Guerrero v. N.C. Grower's Assoc.*, 338 F.Supp.2d 649, 654 (E.D.N.C. 2004)). "If the class is conditionally certified, the court typically authorizes plaintiffs' counsel to provide the putative class members with notice of the lawsuit and their right to opt-in." *Id.* at 299 (citing *Romero*, 796 F. Supp. 2d at 705).

"The sole consequence of conditional certification is the sending of court-approved written notice to employees, who in turn become parties to a collective action only by filing written consent with the court." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013) (citations omitted).

"The court proceeds to stage two if the defendant files a motion for decertification, usually after discovery is complete." *Long*, 292 F.R.D. at 299. "Accordingly, throughout the second stage,

4

courts apply a heightened fact specific standard to the 'similarly situated' analysis." *Id.* "Upon a determination that the plaintiffs established the burden of proving they are 'similarly situated,' the collective action proceeds to trial." *Id.* "On the contrary, if the court determines that the plaintiffs are in fact, not 'similarly situated,' the class is decertified[,] and the original plaintiffs may proceed on their individual claims." *Id.*

IV.  **DISCUSSION AND ANALYSIS**

    A.  ***Whether Slendak and putative class members are similarly situated under step one's lenient standard***

Slendak maintains he "easily fulfills the lenient standard for establishing that all delivery drivers employed by Defendants are similarly situated" in that they "held the same job, shared the same primary duty of delivering food using their personal vehicles, were required to incur automobile costs in delivering food to Defendants' customers, and were reimbursed according to Defendants' unlawful policy." Slendak's Motion at 6 (internal quotation marks omitted).

Defendants, however, assert "conditional certification of a class would be inappropriate, unfair, and/or an inefficient method of adjudicating the asserted claims" because such claims "require an individualized assessment of alleged liability for each member of the purported class." Defendants' Response at 5.

In reply, Slendak posits Defendants' argument is premature, as "issues of manageability and individual inquiry are appropriately addressed at the decertification stage." Slendak's Reply at 2. He cites numerous district court decisions in this regard.

The Court agrees with the other judges in this district who have determined conditional certification is proper "where the proposed class members' claims 'share common underlying facts and do not require substantial individualized determinations for each class member.'" *Gordon v.*

*TBC Retail Grp., Inc.*, 134 F. Supp. 3d 1027, 1031 (D.S.C. 2015) (quoting *MacGregor v. Farmers Ins. Exch.*, No. 2:10-cv-03088, 2012 WL 2974679, at *2 (D.S.C. July 20, 2012)). "Ordinarily, the plaintiff's burden at this initial stage is fairly lenient, requiring only a modest factual showing that members of the proposed class are 'victims of a common policy or plan that violated the law.'" *Id.* (quoting *Regan v. City of Charleston*, No. 2:13-cv-3046, 2014 WL 3530135, at *2 (D.S.C. July 16, 2014)).

Altogether, at this early juncture, the substantial allegations in Slendak's declaration, as well as the complaint, provide a sufficient basis for the Court to conditionally certify his FLSA collective action for compensatory damages, liquidated damages, litigation costs, and attorney's fees.

### B.      *Whether the proposed notice is proper*

The FLSA opt-in requirement "seeks to balance employees' interest in pooling resources to bring collective actions and employers' interest in reducing baseless lawsuits." *Degidio*, 880 F.3d at 143–44. "[T]o strike this balance, district courts must be able to supervise contacts between the parties and their respective counsel to ensure that potential plaintiffs are not misled about the consequences of joining a class in an ongoing employment dispute." *Id.* at 144. "The district court's supervisory role helps to ensure that employees receive accurate and timely notice . . . so that they can make informed decisions about whether to participate." *Id.* (alterations and internal quotation marks omitted) (quoting *Hoffmann-La Roche*, 493 U.S. at 170).

According to Slendak, the proposed notice "[is] accurate, simple to understand, and based on [notice] forms that have previously been approved in prior cases." Slendak's Motion at 9. He requests the Court order Defendants "to disclose the names, last known addresses, email addresses, and telephone numbers of the [p]otential [p]laintiffs." *Id.* He further seeks a [seventy-five]-day opt-in period measured from the date notice is mailed." *Id.*

Defendants, on the other hand, maintain the notice "is unfair, insufficient, and incomplete." Defendants' Response at 8. Defendants aver a seventy-five-day opt-in period is unreasonably long. Defendants further contend Slendak's request for them to disclose the telephone numbers of putative class members "raises privacy concerns, as well as concerns involving ex-parte communications . . . beyond the scope of the ultimate Court-approved notice." *Id.* at 7. Finally, Defendants insist "a third-party should administer notice, with [Slendak] bearing the cost of the third-party administrator." *Id.* at 9. The Court will address each argument in turn.

### 1.     *Whether the proposed notice is unfair, insufficient, and incomplete*

Defendants first complain the notice lacks their "position as to the merits of the claims, the obligations of an opt-in party if he or she elects to participate in the case (the discovery and trial process), [and] an opt-in party's option to retain counsel of his or her choosing." Defendants' Response at 9. Additionally, Defendants assert the notice "contains misleading statements and fails to accurately clarify the neutral role of the Court in any proceeding." *Id.*

The notice contains the following brief recitation of Slendak's allegations:

> The lawsuit alleges that delivery drivers have been required to incur more out of pocket expenses (i.e., gas, vehicle wear and tear, insurance costs) than they were reimbursed by Domino's. Consequently, the lawsuit claims that Domino's failed to actually pay the workers hourly wages in excess of the federal minimum wage for each hour worked.

Proposed Notice at 1. But, it neglects to indicate Defendants have denied such allegations. And, the Court agrees with the reasoning of other district courts that have determined the notice form should advise whether Defendants deny liability. *See, e.g.*, *Delaney v. Geisha NYC, LLC*, 261 F.R.D. 55, 59 (S.D.N.Y. 2009) (finding sufficient a statement that "[Defendant] denies . . . [it] violated the Fair Labor Standards Act"); *Byard v. Verizon W. Va., Inc.*, 287 F.R.D. 365, 373–74 (N.D. W. Va. 2012) (considering adequate a provision that "[Defendants] deny the allegations and maintain [Plaintiffs] were properly paid").

The Court also deems persuasive opinions requiring the notice to advise putative class members of trial and discovery obligations should they choose to opt-in. *See, e.g.*, *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 450 (S.D.N.Y. 2011) (explaining courts routinely accept language advising "prospective members . . . of the possibility that they will be required to participate in discovery and testify at trial"); *Byard*, 287 F.R.D. at 374 (amending a notice "to inform prospective members of the prospect of providing deposition and court testimony and participating in discovery").

Moreover, the Court agrees with Defendants' contention putative class members should be informed of the "option to retain counsel of [their] choosing." Defendants' Response at 9. *See, e.g.*, *Whitehorn*, 767 F. Supp. 2d at 450 (altering a notice "to state that participating plaintiffs may retain their own counsel"); *Bishop v. AT & T Corp.*, 256 F.R.D. 503, 509 (W.D. Pa. 2009) (deeming sufficient a notice that both "informs prospective class members that if they opt-in to the litigation, they will be represented by plaintiffs' counsel[,]" and "explains that if employees decide not to join the action, they are free to proceed with an individual action").

Inasmuch as Defendants posit the notice "contains misleading statements[,]" Defendants' Response at 9, they have failed to identify any such statements, so the Court will reject their contention. Nor have Defendants offered any support for their proposition the notice "fails to accurately clarify the neutral role of the Court in any proceeding." *Id.* And, the Court is unable to discern any manner in which the notice reflects "the appearance of judicial endorsement of the merits of the action." *Hoffmann-La Roche*, 493 U.S. at 174.

Thus, Slendak shall amend the notice consistent with the Court's discussion above.

### 2. *Whether a seventy-five-day opt-in period is unreasonably long*

Defendants next maintain the seventy-five-day opt-in period is too lengthy. Although "[n]otice periods may vary, . . . numerous courts around the country have authorized ninety[-]day opt-in periods for collective actions." *Butler*, 876 F. Supp. 2d at 575. Accordingly, the Court is persuaded a seventy-five-day opt-in period is more than reasonable.

### 3. *Whether Slendak's request for the telephone numbers of putative class members invades their privacy*

Defendants further contend Slendak "has demonstrated no 'special need' to infringe on the privacy of the putative class members by obtaining their telephone number[s]." Defendants' Response at 8. For support, Defendants cite *Hart v. Barbeque Integrated, Inc.*, which explained "district courts in [the Fourth Circuit] have required a showing of a 'special need' before requiring the disclosure of telephone numbers." 299 F. Supp. 3d 762, 772 (D.S.C. 2017).

Slendak, however, notes "courts routinely order the disclosure of all information [he] requests. In fact, courts regularly order the disclosure of far more sensitive information including birthdays and social security numbers to assist in finding putative [class members] who have moved or are otherwise unreachable at their last known address." Slendak's Reply at 5.

Here, Slendak has neglected to identify any special need for the disclosure of telephone numbers. And, email addresses, which Slendak unobjectionably requests, will provide an electronic means of notifying putative class members. The Court will therefore decline to mandate Defendants also produce the putative class members' telephone numbers.

### 4. *Whether a third-party should administer notice*

Lastly, Defendants posit, "to safeguard privacy, a third-party should administer notice, with [Slendak] bearing the cost of the third-party administrator." Defendants' Response at 9. Slendak's counsel notes he "often uses a third-party administrator for notice and may choose to do so here.

9

However, there is no particular privacy concern here that justifies a mandate from the Court to use an administrator." Slendak's Reply at 5 n.4.

The Court agrees with Slendak: it is unable to conclude this action raises any unique concerns warranting the appointment of a third-party administrator. Indeed, as Slendak maintains, his counsel "regularly handles FLSA collective action notice projects and has systems in place to protect plaintiff[s'] privacy." *Id.* at 5.

*****

For all these reasons, although the Court will grant Slendak's motion for conditional certification, it will require: (1) Slendak to make the modifications referenced above and (2) the parties to file with the Court a consent amended proposed notice. Once the parties have submitted such notice and the Court has approved it, Slendak will be permitted to mail and email the notices to putative class members. *See Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1261 n.40 (11th Cir. 2008) ("District courts following the two-step . . . approach should treat the initial decision to certify and the decision to notify potential collective action members as synonymous.").

## V.       CONCLUSION

Wherefore, based on the foregoing discussion and analysis, it is the judgment of the Court Slendak's motion for conditional certification is **GRANTED.**

Not later than fourteen days after the entry of this Order, the parties shall conference and submit (1) a proposed consent amended scheduling order and (2) a proposed consent amended notice.

**IT IS SO ORDERED.**

Signed this 28th day of October 2025, in Columbia, South Carolina.

                                                    s/ Mary Geiger Lewis
                                                    MARY GEIGER LEWIS
                                                    UNITED STATES DISTRICT JUDGE