IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

Case No. 3:24-cv-03988-MGL

| | |
|---|---|
| **RUSSELL ANDREW SLENDAK,** individually and on behalf of similarly situated persons,<br><br>Plaintiff,<br><br>v.<br><br>**LEAD DOG PIZZA, INC. ET AL.,**<br><br>Defendants. | **PLAINTIFF'S UNOPPOSED MOTION TO FACILITATE NOTICE OF FLSA SETTLEMENT AND FOR APPROVAL OF FLSA SETTLEMENT** |

Plaintiff Russell Andrew Slendak ("Named Plaintiff") files this memorandum of law in support of Plaintiff's Consent Motion to Facilitate Notice of FLSA Settlement and for Approval of FLSA Settlement ("Motion"). By and through the Motion, Plaintiff requests the Court: (1) in the exercise of its discretion, order that notice of the settlement be provided to all Pizza Delivery Drivers, as described below; (2) approve the Proposed Notice of Settlement of Collective Action Lawsuit ("Notice"); (3) approve the proposed Consent Form; (4) authorize leave for a third-party administrator to send all Pizza Delivery Drivers the Court's approved Notice, Consent Form, and a postage paid return envelope; and (5) approve the terms of the Agreement (together "Approval Order").

**I.      INTRODUCTION**

This is a case in which the Plaintiffs allege Defendants Lead Dog Pizza, Inc. and John W. Eckburg ("Defendant") failed to pay them and other similarly situated non-exempt Pizza Delivery Drivers for all minimum wages. On or about October 28, 2025, the Court granted Plaintiff's Motion for Collective Action Certification under the federal Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq*. ("FLSA") [ECF No. 51] and directed the Parties to confer on the proposed notice to putative class members. In conjunction with this conference, the Parties agreed to participate in a private mediation

process in an attempt to resolve Plaintiffs' claims on a collective basis. Prior to the mediation, the Parties exchanged information, including payroll data for approximately 450 current and former Pizza Delivery Drivers. Based on this information, the Parties prepared their respective damages analyses. After considerable negotiations conducted through experienced wage and hour mediator Allen Blair that was held on December 11, 2025, the Parties were able to reach an FLSA collective action settlement of this matter. The terms of the Parties' settlement are set forth in a Settlement Agreement (the "Settlement Agreement" or "Agreement") (attached as Exhibit 1). A copy of the Notice and Consent Form are attached as Exhibits A and B to the Agreement, respectively. The Parties have negotiated an Agreement on behalf of an FLSA collective class defined as: all current and former Pizza Delivery Drivers who worked for Defendant during the period November 10, 2022 through December 11, 2025.

    The Agreement allows Pizza Delivery Drivers to participate in the settlement on an opt-in basis pursuant to the collective action procedure of the FLSA. The maximum total amount of the settlement is $200,000.00 (the "Maximum Settlement Amount."). Pizza Delivery Drivers who submit valid Consent Forms, will receive a Settlement Check that provides compensation for alleged unpaid reimbursement expenses incurred and minimum wages owed while employed by Defendant. In exchange, the settlement contains a release of all state and federal wage and hour law claims against Defendant that were or could have been asserted in the Litigation, including but not limited to claims for unpaid wages, minimum wage compensation, and liquidated or other damages. Pizza Delivery Drivers who choose not to submit a Consent Form will not receive their proportional share of the Net Settlement Fund and will not release any wage and hour claims against Defendant. Any unclaimed funds will ultimately be retained by Defendant. This Settlement is informed by prior related settlements that have been approved by courts sitting in the Fourth Circuit. For example, in *Halterman v. The Renfrow Group, LLC*, Case 5:25-cv-00100-D-BM, the United States District Court for the Eastern

District of North Carolina recently approved, on November 6, 2025 in Dkt. #18, a similar FLSA collective-action settlement under the same proposed structure, handled by Plaintiffs' Counsel) recognizing in part that the settlement was the result of experienced Counsel working together, and furthered interest of judicial economy.

## II.     LEGAL BASIS FOR FLSA SECTION 216(b) NOTICE

Plaintiffs seek this Court's approval to send the proposed Notice and Consent Form to all Pizza Delivery Drivers who worked for Defendant from November 10, 2022 through December 11, 2025. The proposed Notice and Consent Form are attached to the Agreement as Exhibit A and Exhibit B, respectively.

### A.     The District Court is Authorized to Issue Notice of the Agreement

The collective action provision of the FLSA allows for one or more employees to bring an action "on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b); *Hoffman-La Roche Inc. v. Sperling*, 493 U.S.165, 170 (1989). To serve the "broad remedial purpose" of the FLSA, courts are afforded the power to authorize notice to other potential class members of their rights to "opt-in" to a pending collective action. *Id*. These early notices, authorized by the court, are helpful to protect against misleading communications by the parties, resolve disputes regarding the content of any notice, prevent the proliferation of multiple individual lawsuits, assure that the joinder of additional parties is accomplished properly and efficiently, and to expedite resolution of the dispute. *Id*. at 170-172. Here, the Order sought by the Parties' Consent Motion furthers these remedial goals.

### B.     Plaintiffs and the Pizza Delivery Drivers Are Similarly Situated

The Court previously found that Defendants' Pizza Delivery Drivers are similarly-situated. Defendants have agreed not to further contest this finding for settlement purposes only. A final finding by the Court that Plaintiffs and Pizza Delivery Drivers are similarly situated is further supported by the following facts as advanced by Plaintiffs (which Defendants do not contest only for the purposes of

settlement): (1) Plaintiffs and Pizza Delivery Drivers were employed by Defendant; (2) Plaintiffs and Pizza Delivery Drivers performed the same or materially the same job duties; (3) Plaintiffs and Pizza Delivery Drivers were paid based on an hourly rate, admittedly non-exempt basis, were thus entitled to be compensated at least at the minimum wage rates, and commonly allege that they were not. Accordingly, for the purposes of settlement, Plaintiffs and Pizza Delivery Drivers performed similar job duties and were subject to the same wage and hour policy and practice challenged as unlawful in the Litigation.

      C.      <u>The Proposed Notice and Consent Form Provides Adequate Notice</u>

The proposed Notice attached to the Agreement as <u>Exhibit A</u> is clear and straightforward. It was drafted jointly by counsel for the Parties. The proposed Notice also informs Pizza Delivery Drivers of the formula to be used to calculate individual settlement amounts. The proposed Consent Form provides Plaintiff Counsel with personal contact information for the Pizza Delivery Drivers and a consent to join this action as an opt-in plaintiff under the FLSA. The proposed Notice and Consent Form are neutral and comply with the standards of fairness required for a notice to be disseminated under authority of the Court. Accordingly, the Court should approve both documents and authorize notice to Defendants' Pizza Delivery Drivers pursuant to the terms of the Agreement.

      D.      <u>Notice to Delivery Drivers</u>

The Agreement provides what Plaintiffs believe is a fair and practical procedure for notifying Pizza Delivery Drivers of the Settlement. Within twenty (20) days after receiving the contact information for the Pizza Delivery Drivers, the Settlement Claims Administrator will send Delivery Drivers the Notice and Consent Form by first-class mail and email. [Agreement, ¶ 2.4(B)]. To provide the best notice practicable, the Settlement Claims Administrator is authorized to take reasonable efforts to obtain forwarding addresses after the initial mailing and will resend the Notice to those forwarding addresses. [Agreement, ¶ 2.4(C)]. The Settlement Claims Administrator will send a reminder notice to each Pizza

Delivery Drivers who does not return a valid Consent Form within thirty-five (35) days of the Notice first being mailed. [Agreement, ¶ 2.4(D)]. Pizza Delivery Drivers will have 50 days to submit a Consent Form to receive their share of Settlement funds. [Agreement, ¶ 2.5(A)].

### III.     THE TERMS OF THE AGREEMENT

The Agreement provides that the Collective Members include "the Named Plaintiff, Current Opt-In Plaintiffs, and all persons who timely file a valid Consent Form in accordance with the Agreement." [Agreement, ¶ 1.5]. There are approximately 450 Pizza Delivery Drivers who worked for Defendant during the Collective Period. Each Pizza Delivery Drivers for whom Defendant's records show worked for Defendant in Georgia or South Carolina from November 10, 2022 through December 11, 2025, or have already consented to join this matter, will be eligible to participate in the settlement and will be fully advised of this settlement with the Notice that is attached to the Agreement as Exhibit A and the Consent Form that is attached to the Agreement as Exhibit B.

Pursuant to the Agreement, the Maximum Settlement Amount is $200,000.00.[1] Of this amount, the cost of a third-party Settlement Claims Administrator, not to exceed $5,000.00, will be paid out of the Maximum Settlement Amount. In addition, in recognition of the work involved and the benefit achieved by the Named Plaintiff, Plaintiffs seek Participation Payments in the amount of $3,500.00 to Named Plaintiff. *See Halterman* (where the E.D. N.C. recently approved $4,000.00 payment to named plaintiff) (CITE ACTUAL ORDER IF WE ADD ABOVE).

Finally, Plaintiffs' Counsel seeks an amount not to exceed 32% of the Maximum Settlement Amount as attorneys' fees and any amount for advanced litigation expenses and costs. *See* Agreement, ¶ 3.2. Each of these items fit within the range frequently approved by courts that informed this

---

[1] The Agreement contains a provision allowing the Defendant the right, in its/their sole discretion, to cancel the Agreement in its entirety to the extent that the payments from the Net Settlement Fund (i.e., the aggregate Potential Settlement Payments owed to Collective Members) listed on the Final Payment List exceeds $45,000.00.

Settlement. *See id.*; *See also*, *Chenkus v. Prairie Pizza, Inc. dba Domino's*, 3:17-cv-00723 (W.D..N.C.) (similarly approving claims made structure, service award of $5,000, and approving of attorneys' fees request of up to 33.3% of the total fund). The remaining funds of the Maximum Settlement Amount, after subtraction of the Settlement Administrator fees and costs, Court-approved incentive payments, and Court-approved attorney's fees and costs for Plaintiffs' counsel (hereinafter the "Net Settlement Fund") will be utilized to pay Collective Members (i.e. putative collective action members who have timely filed the Consent Form), based on the number of miles driven as a Pizza Delivery Driver during the Collective Period. Specifically, the total number of miles driven by all Pizza Delivery Driver during the Collective Period will be calculated pursuant to Defendant's business records to obtain the "Total Denominator." [Agreement, ¶ 3.4(B)]. The total number of miles driven by each Pizza Delivery Driver will be divided by the Total Denominator to determine each Collective Member's "Portion of the Net Settlement Fund." Collective Members will receive their proportional share of the Net Settlement Fund. Pizza Delivery Drivers who choose not to submit a Claim Form will not receive their proportional share of the Net Settlement Fund and will not release any wage and hour claims against Defendant.

Release of Claims

> In exchange for Settlement Checks, Collective Members agree to the following:
>
> > Upon the Effective Date, and except as to such rights or claims as may be created by this Agreement, each Collective Member who has timely submitted a valid Consent Form, shall, on behalf of himself or herself and his or her respective current, former, and future heirs, spouses, executors, administrators, agents, and attorneys, be deemed to fully and finally release, remise, and finally and forever discharge the Released Parties from all wage and hour claims of any type, including all claims arising under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.),* the wage and hour laws of the States of Georgia and South Carolina, all local laws, and all claims asserted in the Litigation ("Released Claims"). The Released Claims include all claims for unpaid regular or overtime wages, claims under any wage and hour and wage payment law claims (including statutory claims), all derivative benefit claims (both ERISA and non-ERISA benefits, including 40l(k) benefits or matching benefits, retirement benefits, and deferred compensation benefits) arising under any state or

local wage and hour law or regulation, interest on such claims, liquidated damages, penalties, attorneys' fees and costs related to such claims, and all other available remedies and relief of any kind of nature whatsoever related to such claims from the date of the earliest statute of limitations applicable to the claims of any Collective Member through the date of the entry of the Approval Order.

### A. Attorneys' Fees and Costs

Pursuant to the Agreement, Collective Counsel's attorneys' fees shall not exceed 33% of the Maximum Settlement Amount and will compensate Collective Counsel for all work performed in this lawsuit as well as all of the work remaining to be performed, including, but not limited to securing Court approval of the Agreement, making sure that the settlement is fairly administered and implemented, and obtaining final dismissal of the lawsuit. In addition, the Agreement provides that Collective Counsel shall receive reimbursement of their out-of- pocket costs and expenses.

### B. The Court Should Approve the Agreement

The standard for approval of an FLSA settlement is straightforward: a district court should approve a settlement if it was reached as a result of contested litigation and it is a fair and reasonable resolution of a *bona fide* dispute between the parties. *Latham v. Branch Banking and Trust Co.*, 2014 WL 464236, at *1 (M.D.N.C. Jan. 14, 2014). In evaluating whether a settlement is reasonable, adequate, and fair, a court should consider: (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the opinions of class counsel and class members after receiving notice of the settlement whether expressed directly or through failure to object; and (6) the probability of the plaintiffs' success on the merits and the amount of the settlement in relation to potential recovery. *Lomascolo v. Brinckerhoff, Inc.*, 2009 WL 3094955, at *10 (E.D. Va. Sept. 28, 2009).

#### 1. The Parties Have a *Bona Fide* Dispute

Court approval of FLSA settlements requires that the settlement resolve a *bona fide* dispute over

FLSA provisions. *Lomascolo*, 2009 WL 3094955, at *16 (citing *Lynn's Food Stores Inc. v. U.S. Dep't of Labor*, 679 F.2d 1350, 1355 (11th Cir. 1982)). Here, Plaintiffs allege that Defendants failed to pay the Collective Members for all minimum wages owed and reimbursements incurred. Defendants deny this allegation and maintain that it properly paid Plaintiffs under the FLSA. After evaluating the evidence, it is clear that significant factual and legal questions remain with respect to liability and damages under Plaintiffs' theory of the case. Accordingly, the Court should decide that a bona fide dispute exists between the parties.

    **2. The Settlement is Reasonable, Adequate, and Fair**

The Settlement was negotiated at arm's length by experience counsel concerning *bona fide* disputes between their clients with respect to liability and amounts due, assuming FLSA violations had occurred. The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (quoting *In re Austrian & German Bank Holocaust Litigation*, 80 F. Supp. 2d 164, 178 (S.D.N.Y. 2000)). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Frank*, 228 F.R.D. at 186 (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972); *see also, e.g., Duprey v. Scotts Co., LLC*, 30 F. Supp. 3d 404, 411 (D. Md. 2014) ("Here, the amount provided in [the settlement] is fair and reasonable in light of the particular circumstances of the case, including Duprey's recognition of the strong defenses asserted by Scotts, as explained above.").

The Maximum Settlement Amount only obtained after the Parties engaged in a structured ADR process reflects 1) the fact that Defendants would have vigorously contested the merits of Plaintiffs' FLSA claims; and 2) that Defendants contend the shorter two-year statute of limitations for non-willful violations of the FLSA would have been appropriate, which would significantly reduce – or eliminate –

many Class Member's possible recovery, in large part because many eligible pizza delivery drivers worked only during the third year. As further demonstrated in Plaintiff's Counsel's Declaration, the Agreement is reasonable, adequate, and fair; in the interest of judicial economy; and should be granted.

## IV. CONCLUSION

Based upon the foregoing reasons, Plaintiffs respectfully request that the Court grant this Consent Motion to Facilitate Notice of Fair Labor Standards Act Settlement and for Final Approval of Fair Labor Standards Act Settlement and enter the accompanying proposed Order.

>*/s/ Jacob J. Modla*
>Jacob J. Modla
>**CROMER BABB & PORTER, LLC**
>P.O. Box11675
>Columbia, South Carolina 29211
>Phone: (803) 799-9530
>jake@cromerbabb.com
>
>Colby Qualls
>**FORESTER HAYNIE PLLC**
>10800 Financial Centre Pkwy, Suite 510
>Little Rock, Arkansas 72211
>Phone: (214) 210-2100
>cqualls@foresterhaynie.com

February 9, 2026

## CERTIFICATE OF CONFERENCE

I hereby certify that I conferred with Defense counsel and, pursuant to the terms of the Parties' Settlement Agreement was advised that Defendants do not oppose the relief requested herein.

>*/s/ Jacob J. Modla*
>Jacob J. Modla

February 9, 2026

## CERTIFICATE OF SERVICE

This is to certify that the undersigned filed the foregoing using the Court's CM/ECF system which will send notification of such filing to the appropriate CM/ECF participants.

>*/s/ Jacob J. Modla*
>Jacob J. Modla, Esq.

February 9, 2026